MABEL P. OGDEN, APPELLANT, V. SOVEREIGN CAMP, WOOD-
MEN OF THE WORLD, APPELLEE.

FILED JUNE 11, 1909.   No. 15,970.

1. Insurance: REINSTATEMENT: EVIDENCE. In a suit on a certificate
   issued by a fraternal beneficiary association, a written statement
   of delinquent assessments made out by an officer of defendant
   and introduced by plaintiff as evidence of the date of assured's
   reinstatement was properly held by the trial court to be without
   probative force for such a purpose, when contradicted on that
   issue by defendant's records and explained and disproved by oral
   testimony.

2. Trial: DIRECTING VERDICT. Where the evidence is insufficient to sus-
   tain a judgment in favor of plaintiff, it is not error to direct a
   verdict for defendant.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Joel W. West,* for appellant.

*A. H. Burnett,* contra.

ROSE, J.

Defendant is a fraternal beneficiary association, and
this is a suit to recover the amount due on a certificate
issued by it to Charles Ogden. Plaintiff was Ogden's wife
and was designated by him as beneficiary. The certificate
was issued May 9, 1899, and Ogden died January 25, 1904.
Under the laws of the association delinquency in the pay-
ment of an assessment suspended membership and for-
feited assured's beneficial interests. In the court below
defendant denied liability on the ground that Ogden did
not pay his assessment for December, 1903. The trial
court was of the opinion there was no evidence for the
consideration of the jury in disproof of the defense stated,
and directed a verdict in favor of defendant. From a
judgment of dismissal plaintiff appeals. The facts relat-
ing to this litigation are more fully detailed in three

former opinions of this court. *Sovereign Camp, W. O. W., v. Ogden,* 76 Neb. 643; *Ogden v. Sovereign Camp, W. O. W.,* 78 Neb. 804, 806.

Plaintiff frankly admits that Ogden, during the month of December, 1903, did not pay his assessment for that month. She insists, however, that he was in arrears during the previous year; that in reinstating himself in the association in December, 1902, he made a payment of $12.50, which included among other items five assessments; that under the laws of the association only four of the assessments were appropriated by it at that time, and that the fifth assessment remained a continuing credit in his favor and should be applied to the assessment for December, 1903, since all intervening assessments were paid. It is argued that forfeiture was thus averted. The merit of this contention on the part of plaintiff depends on the date of Ogden's reinstatement in 1902. Plaintiff says it occurred in December, and defendant's proof shows the disputed date was November 25, 1902. If plaintiff is correct in her position, Ogden had the amount of one assessment to his credit at the time of his alleged delinquency in December, 1903; but, if he paid his arrearages during November, he was not entitled to the credit claimed by plaintiff. The record shows that in November, 1902, Ogden was in arrears for the July, August, September and October assessments. Under a law of the association "four monthly payments of assessments" were essential to his reinstatement, and of these three were to be sent to the sovereign clerk and the fourth placed to Ogden's credit as an advance payment for the "current month." He paid his assessments from January, 1903, to November, 1903. It is therefore clear that if he was reinstated in the "current month" of November, 1902, by making five payments November 25, which aggregated $12.50, and the association was required to credit his fourth payment to the assessment for that month, the five payments must necessarily have been applied as follows: First payment to August assessment; second to September; third to

October; fourth to November; fifth to December. It follows that Ogden did not have the amount of one assessment to his credit in December, 1903, if he made his payment of $12.50 November 25, 1902, and was reinstated at that time. In directing a verdict for defendant the trial court held there was for the consideration of the jury no evidence that Ogden was reinstated in December, 1902, by payment of his arrearages during that month. Plaintiff's contention that Ogden was reinstated in December, 1902, rests alone on a document found among his papers after his death and described as a "reminder." It is dated December 1, 1902, is headed, "Reminder to pay within the month," and is directed to Ogden. It notified him to pay assessment 147 on or before January 1, 1903, and referred to some of the laws of the association. It bore the name of John N. Crawford, clerk, and contained the statement that there were due from Ogden and unpaid the following items: Assessment 147, $1.60; four assessments to reinstate, $9.20; emergency fund dues 20 cents; sovereign camp monthly dues 15 cents; camp general fund dues 35 cents; physician's examination fee $1; total $12.50.

In reviewing a former record containing the reminder described, this court referred to an inconsistency between its date and the dates in the books kept by the clerk of the camp, observed there was no attempt to explain the discrepancy, and held that the question as to the date of payment was properly submitted to the jury for determination. *Ogden v. Sovereign Camp. W. O. W.*, 78 Neb. 804, 806. In the record now presented defendant explained the discrepancy in dates by uncontradicted evidence. E. R. Stiles, an auditor in the sovereign clerk's office, testified, in substance, that he prepared the reminder November 25, 1902, at the request of Philip Miller, an officer who solicited members; that he used a blank which had been printed for distribution among local camps before the end of November and dated December 1, 1902, and that he wrote on the instrument the name of John N.

Crawford, camp clerk. "Rather than change the num-
bers," said the witness, "I put in the four assessments
which.were necessary, being the three month's arrearages,
and including the advance assessment." He also stated
that assessment 147 was for December, 1902, and that he
had given the statement to Miller. Miller's testimony
in effect shows that he went to Stiles' office, procured the
reminder, and delivered it to Ogden November 25; that
he had an interview with Ogden respecting the payment
of arrearages; that he called on Dr. Wiese and took him
to Ogden's office; that Ogden was examined for the pur-
pose of reinstatement; that the transactions occurred
November 25, 1902, and that the following document was
signed in presence of the witness by both Ogden and the
physician: "This is to certify that I have personally
examined Sovereign Charles Ogden, a suspended member
of Omaha Camp No. 16, state of Nebraska, this 25th day
of November, 1902, and I am satisfied that he is now in
good health and has not had any serious illness during
the past six months. He has not become an habitual user
of intoxicants or opium, and is not engaged in a prohibited
occupation, and is worthy to be reinstated a member of
the Woodmen of the World. H. L. Wiese, M. D., Office,
15th & Harney St. I certify and agree that the above is
true, and I desire to be reinstated as a member of the
Woodmen of the World, and said statement shall be a
condition of forfeiture of my benefits if found to be un-
true, and that this reinstatement shall not be in effect
until accepted by the sovereign clerk. Charles Ogden.
Certificate of clerk of camp. I hereby certify that Sov-
ereign Charles Ogden certificate No. —— above referred
to has this day paid four assessments amounting to $6.40,
four months' emergency fund dues amounting to 80 cents,
four months' sovereign camp dues amounting to sixty
cents, and four months' camp dues amounting to $1.40. I
enclose herewith to the sovereign clerk draft for $5.85,
being three assessments, three emergency fund dues and
three months' sovereign camp dues, payable to the order

of the sovereign banker. Dated this 25 day of November, 1902. John N. Crawford, Clerk, Omaha Camp, No. 16, at Omaha, state of Nebraska."

The witness Miller further testified that he received from Ogden at the time $12.50, immediately paid the physician $1, and the same day turned over to Crawford, camp clerk, the remainder of $11.50. Crawford testified Miller handed him that amount November 25, and told him it was from Ogden; that he entered the payment on his books, and made a remittance to the sovereign camp; that he received the physician's certificate from Miller November 25, and filed it with the sovereign clerk; that he filled out and signed the certificate following that of the physician, and filed the document with the sovereign clerk; that he remembered Ogden was reinstated at the time, though he could find no record of his reinstatement in the records of the meetings of the camp. A page of the clerk's cash book was introduced in evidence, and shows payment of $11.50, November 26, on account of the five assessments for August, September, October, November and December. In addition, R. L. Forgan, an assistant clerk charged with the duty of making collections from delinquent members, testified in effect that in January, 1904, he had a conversation with Ogden respecting the payment of the assessments for December, 1903, and January, 1904, and told him, in substance, that he was under suspension for nonpayment of the December assessment, and suggested payment for the months of December and January, and that Ogden expressed a purpose to drop out of the order and said he did not wish to be reinstated.

The oral and documentary evidence adduced by defendant at the last trial of this case in the district court destroyed the probative force of plaintiff's reminder as evidence that Ogden paid five assessments in December, 1902, and that he was reinstated during that month. On that issue the document introduced by plaintiff, when explained and disproved by other evidence, was insufficient to sustain a judgment in her favor, and the trial court

did not err in directing a verdict for defendant. Only one reasonable conclusion can be drawn from all the facts disclosed, and that is Ogden was not reinstated in December, 1902, by payment of arrearages during that month. Other reasons suggested to defeat a forfeiture are also unsound.

<strong>AFFIRMED.</strong>